E-FILED on    8/9/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID LITMON, JR.,<br><br>    Plaintiff,<br><br>    v.<br><br>SANTA CLARA COUNTY, et al.,<br><br>    Defendants. | No. C-09-02158 RMW<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DISMISSING CASE<br><br>**[Re Docket No. 10]** |

Plaintiff David Litmon, Jr. ("Litmon"), proceeding *pro se* in this matter, filed suit against defendants Santa Clara County ("the County") and Stephen Mayberg ("Mayberg") under 42 U.S.C. § 1983, alleging violations of his Fourth and Fourteenth Amendment rights. Pursuant to a settlement agreement, Litmon dismissed his claim against the County with prejudice. Mayberg moves for summary judgment in his favor. For the reasons set forth below, the court grants the motion and dismisses this case in its entirety.

**I. BACKGROUND**

The Sexually Violent Predator Act ("SVPA") authorizes civil commitment of individuals who have been convicted of certain sex offenses and are found to be sexually violent predators. Welf. & Inst. Code § 6600 *et seq*. Initiating such a petition for civil commitment requires taking the following steps: (1) the Department of Corrections and Rehabilitation and the Board of Parole

Hearings conducts an initial screening to determine whether the person is likely to be a sexually violent predator ("SVP"); (2) if so, the Department of Corrections and Rehabilitation refers the person to the State Department of Mental Health for a full evaluation "in accordance with a standardized assessment protocol, developed and updated by the State Department of Health, to determine whether the person is a sexually violent predator"; (3) if two evaluators concur that the person has a diagnosed mental disorder such that he is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director of Mental Health forwards a request for a petition to be filed for civil commitment to the appropriate county; and (4) if the county's designated counsel concurs with the recommendation, the district attorney or county counsel files a petition for commitment. Welf. & Inst. Code § 6601.

After a petition has been filed, a superior court judge reviews the petition to determine whether the petition states sufficient facts that, if true, would constitute probable cause for believing that the person is a SVP. Welf. & Inst. Code § 6601.5. If so, the person is detained in a secure facility pending a probable cause hearing. *Id.* After the probable cause hearing, if the judge finds probable cause to believe that the person is a SVP, the person is detained in a secure facility until a trial has been conducted to determine whether the person is a SVP. Welf. & Inst. Code § 6602.

While Litmon was serving a prison sentence for various sexual offenses, Mayberg, the Director of the Department of Mental Health, authorized psychological evaluations of Litmon pursuant to the Clinical Evaluator's Handbook ("Handbook"). Compl. ¶ 10. Based on these evaluations, Mayberg requested that the district attorney of Santa Clara County file a petition for Litmon's civil commitment. *Id.* ¶ 11. The district attorney concurred with the recommendation and filed a petition for commitment. *Id.* ¶ 12. On May 2, 2000, Litmon was found to be a SVP pursuant to a jury trial, and he was committed to a state hospital for a two year term. *Id.* ¶ 13.

In 2002, a petition was filed to extend Litmon's commitment until May 2, 2004. *Id.* ¶¶ 14-15. In 2004, a petition was filed to further extend Litmon's commitment until May 2, 2006. *Id.* ¶ 16. In 2005, another petition was filed to extend Litmon's commitment until May 2, 2008. *Id.* ¶ 18. The 2002 petition resulted in a jury trial where the jury found Litmon to be a SVP, providing a basis for

recommitment until May 2, 2004. *Id.* ¶ 17. The 2004 and 2005 petitions never resulted in a jury finding that Litmon was a SVP, as required for recommitment.

In 2006, the SVPA was amended to allow indeterminate commitment terms. Pursuant to this amendment, the district attorney sought retroactive commitment of Litmon to an indeterminate term, and the trial court granted this request without a jury trial. Compl. ¶¶ 30-31. The California Court of Appeal held that the 2006 amendment to the SVPA operates prospectively, not retroactively, and therefore did not authorize imposing an indeterminate commitment term upon Litmon retroactive to the date he was first committed as a SVP. *People v. Litmon*, 162 Cal. App. 4th 383, 412-13 (2008).

On August 15, 2008, the Office of Administrative Law ("OAL") issued a determination that the Department of Mental Health's Handbook was an underground regulation, meaning it was a regulation that had not been adopted in accordance with the requirements of the Administrative Procedure Act ("APA"). Javist Decl. Supp. Mot. Summ. J. Ex. 18. Relying upon this determination, Litmon alleges that Mayberg violated his due process rights under the Fourteenth Amendment by failing to develop a proper standardized assessment protocol before authorizing SVPA psychological evaluations of Litmon and initiating the filing of a SVPA petition against Litmon.

## II. ANALYSIS

### A. Lack of Injury

For Litmon to prevail on his claim against Mayberg, he must show that he was deprived of his liberty due to Mayberg's alleged failure to develop a standardized assessment protocol. Mayberg contends that he did in fact develop a standardized assessment protocol, as required by the SVPA. According to Mayberg, the Handbook was the standardized assessment protocol. He contends that since the SVPA does not require the protocol to be a valid regulation, the fact that the Handbook had not been published in accordance with the requirements of the APA does not change the fact that it meets all of the requirements of a standardized assessment protocol under the SVPA.

Furthermore, Mayberg contends that even if there had been no protocol in place, Litmon cannot show that he has actually been harmed as a result. The injury that Litmon alleges is his loss of liberty due to civil commitment and his having to register his address at a local police station every ninety days post-release. Because Litmon's civil commitment through May 2, 2004 was based

on a jury finding that he is a SVP, while his commitment thereafter was not, the court considers these two time periods separately.

### 1. Commitment Through May 2, 2004

Both the ninety-day registration requirement and Litmon's civil commitment through May 2, 2004 result from jury findings, pursuant to two trials, that Litmon is a SVP, not from the alleged absence of a standardized assessment protocol. The early screening by the Department of Mental Health, during which use of a standardized assessment protocol is required, is merely a preliminary step and "not one affecting disposition of the merits." *People v. Medina*, 171 Cal. App. 4th 805, 814 (2009). "In light of the judicial proceedings [required for civil commitment under the SVPA], including both a probable cause hearing and a trial, it is apparent that the SAP [standardized assessment protocol] is not the determinative step in any SVP's commitment." *Johnson v. Santa Clara County*, 2009 U.S. Dist. LEXIS 120898, at \*18 (Dec. 29, 2009). *See also Medina*, 171 Cal. App. 4th at 814 ("The legal determination that a particular person is an SVP is made during the subsequent judicial proceedings, rather than during the [standard assessment protocol] screening process.").

Moreover, though the SVPA requires use of a standardized assessment protocol during the preliminary screening, Litmon must show how failure to meet procedural requirements at a preliminary stage caused actual injury. *See id.* at 819 ("irregularities in a preliminary hearing require reversal only if a defendant can demonstrate that he or she was deprived of a fair trial or otherwise suffered prejudice"). Litmon does not claim that he was deprived of a fair trial in either of the jury trials that resulted in finding that he was a SVP and thus has failed to show how he was prejudiced by use of a procedurally deficient standardized assessment protocol or even a complete lack of a protocol.

The purpose of the standardized assessment protocol is:

> not to identify SVP's but, rather, to screen out those who are not SVP's. The Legislature has imposed procedural safeguards to prevent meritless petitions from reaching trial. [T]he requirement for evaluations is not one affecting disposition of the merits; rather it is a collateral procedural condition plainly designed to ensure the SVP proceedings are initiated only when there is a substantial factual basis for doing so.

*Medina*, 171 Cal. App. 4th at 814 (quotations and citations omitted). In other words, the only function that a standardized assessment protocol serves is to protect those who are not SVPs from meritless petitions. As a result, when an individual has been found to be a SVP by a jury and committed as a result, he was not harmed by use of a procedurally deficient standardized assessment protocol or even the complete lack of a protocol. *Johnson*, 2009 U.S. Dist. LEXIS 120898, at *18-19. Litmon had two jury trials, and both juries found that he was a SVP, providing a basis for civil commitment through May 2, 2004. Compl. ¶¶ 13, 17. Consequently, Litmon's loss of liberty through May 2, 2004 and the continuing ninety-day registration requirement resulted from jury findings that he was a SVP, not the alleged failure to develop a proper standardized assessment protocol.

### 2. Commitment After May 2, 2004

Litmon's civil commitment after May 2, 2004 was not based on the jury findings necessary for recommitment and was not authorized by the 2006 amendment to the SVPA. *Litmon*, 162 Cal. App. 4th at 412-13. The parties dispute whether this loss of liberty was caused by Mayberg's alleged failure to develop a proper standardized assessment protocol. Regardless, as discussed below, the court finds that Mayberg is entitled to summary judgment on the basis of qualified immunity.

### B. Qualified Immunity

The doctrine of qualified immunity protects government officials from liability for civil damages so long as the official did not violate a clearly established constitutional right that a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009). Thus, a government official is entitled to qualified immunity if either: (1) the facts that the plaintiff alleges fail to state a violation of a constitutional right, or (2) the constitutional right that was allegedly violated was not clearly established at the time of the alleged misconduct. *Id*. Until recently, courts were required to first determine whether a constitutional right had been violated before deciding whether the right at issue was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In 2009, the Supreme Court reconsidered its earlier mandate and held that district courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified

immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson*, 129 S. Ct. at 818.

In this case, the court finds that there is no need to determine whether a constitutional right may have been violated because the alleged violation did not involve a clearly established constitutional right. Determining whether a constitutional right was clearly established turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* at 822 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

According to Litmon, Mayberg's use of the Handbook, which was found to be an underground regulation, as a standardized assessment protocol violated his due process rights. It is worth noting that the OAL's determination that the Handbook was an underground regulation occurred in 2008. Thus, Mayberg did not have the benefit of this determination at the time of his alleged misconduct in 2004, 2005, and 2006. Moreover, even assuming that he should have known that the Handbook needed to be promulgated as an official regulation under the APA, it was not clearly established that use of an underground regulation as the standardized assessment protocol for civil commitment of SVPs would be a violation of due process. In fact, faced with this very question, the California Court of Appeal held that use of a procedurally deficient standardized assessment protocol for commitment of SVPs did not violate due process. *In re Edward C. Ronje*, 179 Cal. App. 4th 509, 519 (2009).

Litmon is unquestionably correct that civil commitment "constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). However, a procedural deficiency in the civil commitment process does not necessarily constitute a violation of due process in every case. In order to determine whether a person has received due process, a court must weigh the following three factors: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value of additional procedural safeguards, and (3) the government's interest, including the function involved and the administrative burdens that the additional procedures would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Weighing these factors, the California

1  Court of Appeal reasonably concluded that use of an underground regulation as a standardized
2  assessment protocol did not violate due process because it posed little risk of erroneous deprivation
3  due to the protections created by the requirement of a probable cause hearing and a trial.  *In re*
4  *Edward C. Ronje*, 179 Cal. App. 4th at 696-97.  Given that judges have reasonably concluded that
5  no due process violation occurs from use of a standardized assessment protocol that fails to comply
6  with the APA, Mayberg's conduct did not violate a clearly established constitutional right.  *See*
7  *Pearson*, 129 S. Ct. at 823 (qualified immunity applies when some judges find the alleged conduct
8  constitutional, even if there is a split of opinion).  Therefore, Mayberg is entitled to qualified
9  immunity.

   **C.    Declaratory and Injunctive Relief**

In addition to monetary damages, Litmon seeks declaratory and injunctive relief.  In particular, Litmon seeks a declaratory judgment that Mayberg violated his Fourth and Fourteenth Amendment rights and an order relieving him of "any disabilities that are directly or indirectly associated with his detention or commitment" under the SVPA.  Compl. ¶¶ 44-45.  The injunctive relief that Litmon seeks is denied because, as discussed above, the ninety-day registration requirement resulted from jury findings, pursuant to two trials, that Litmon is a SVP, not from any deficiency in the standardized assessment protocol.  Declaratory judgment is also denied as moot, based on the court's finding that Mayberg is entitled to qualified immunity.  *See Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1132 (9th Cir. 2005) (case is moot when "one or both of the parties plainly lacks a continuing interest").

**III.  ORDER**

For the foregoing reasons, the court grants Mayberg's motion for summary judgment and dismisses this action in its entirety.

DATED:    8/9/10

RONALD M. WHYTE
United States District Judge